Filed 11/21/14  In re Eh. R. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re Eh.R. et al., Persons Coming Under the Juvenile Court Law. | B254738<br>(Los Angeles County<br>Super. Ct. No. CK68297) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>S.N.,<br><br>　　　　Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jeanette Cauble, Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \*

On appeal, mother S.N. challenges only the juvenile court's dispositional order removing the children from her care and awarding father E.R. sole physical and joint legal custody. We affirm the juvenile court's dispositional order placing the children in father's care.

**FACTS AND PROCEDURE**

Mother and father have three minor children S.R. (born in 1997), Eh.R. (born in 2000) and Ee.R. (born in 2005). The children were declared dependents of the juvenile court. Mother challenges the placement only of Eh.R. and Ee.R.

*1. Petition*

The initial Welfare and Institutions Code section 300 petition was filed on July 1, 2013, approximately a year and a half after the family came to the attention of the Los Angeles County Department of Children and Family Services (DCFS).[1] Prior to the filing of the petition, S.R. was placed outside the family home, and family maintenance services were offered with respect to Eh.R. and Ee.R. Mother did not comply with her case plan, which included a requirement she attend individual counseling and conjoint counseling with S.R.

DCFS filed the section 300 petition and requested the court detain the children. The amended petition as later sustained alleged that mother physically abused S.R., thereby causing her unreasonable pain and suffering. The injuries included "a bleeding laceration to the child's lip, bruises to the child's face, head and neck, swelling to the child's eye, bruises and scratches to the child's chest and pain to the child's jaw." It was further alleged mother endangered the children by allowing her male companion Roy to have "unlimited access to the children despite" a court order prohibiting such contact.

---

[1] Prior referrals were unsubstantiated or inconclusive except that an allegation of sexual abuse perpetrated by a relative on Ee.R. when he was three years old was substantiated.

Undesignated statutory citations are to the Welfare and Institutions Code.

The court struck allegations that mother physically abused Eh.R. and Ee.R. as well as allegations that Roy physically abused Ee.R. The court also struck allegations that mother suffered from mental and emotional problems including depression and anxiety.[2]

## 2. Detention Report

DCFS's detention report dated July 1, 2013, indicated that then 14-year-old S.R. was seen in the pediatric emergency room after a physical altercation with mother. S.R. had been hit, scratched and choked by mother on January 22, 2012. Eh.R. reported that mother previously had pulled her hair.

S.R. returned home July 24, 2012. But in January 2013, DCFS again received reports of conflict between S.R. and mother. There was an altercation after S.R. refused to spend time with mother's boyfriend Roy who DCFS described as an alcoholic with a "shady" background. On June 11, 2013, Eh.R. and Ee.R. expressed fear of mother because she would take them to Roy's house where he would drink and smoke marijuana. Mother acknowledged that Roy was an alcoholic and agreed to make sure the children had no contact with Roy.

On July 1, 2013, the court ordered the children were to have no contact with Roy. Mother disregarded the order. Eh.R. did not like staying at Roy's house. She was scared of him. S.R. reported that Roy pulled her shirt down, which made her feel violated. Ee.R. also disliked Roy.

On July 22, 2013, the court ordered the children detained from mother.

## 3. Subsequent Reports

In August 2013, DCFS reported that Eh.R. did not want to visit with mother. DCFS also reported that Ee.R.'s foster mother did not want to care for him anymore because mother repeatedly called and threatened to allege abuse. The foster mother reported that mother's calls upset Ee.R. Mother failed to attend conjoint counseling sessions with S.R.

---

[2] Because father is not a party to this appeal, we need not describe the allegations that pertain to him.

DCFS reported that S.R. stated that mother hit her on her head, face and body with her fist. Eh.R. said that S.R.'s eye was swollen, and she had scratches and bruises on her neck, chest, and jaw. Eh.R. reported that mother would "beat them behind the father's back" when father would go out of town. Eh.R. said that mother disciplined her by choking her, hitting her with belts, sometimes leaving bruises. Eh.R. reported mother disciplined Ee.R. by throwing shoes at him, but Ee.R. denied these allegations. Eh.R. also reported that mother took the children to Roy's house despite a court order that the children should not be there. Eh.R. stated that Roy touched her inappropriately when he pulled down her shirt.

Mother provided several certificates. These showed that mother completed the orientation for a foster home, was a certified domestic violence counselor, completed a program in alcohol and drug counseling, participated in community service, and took a 33-hour parenting class.

On October 23, 2013, DCFS reported that mother had not been participating in joint counseling with S.R. and mother missed a therapy session. S.R. had to be placed in a new foster home because of behavioral problems. Ee.R. had to be placed in a new foster home because mother had been harassing Ee.R.'s foster parents. Ee.R. was forced to move three times because of mother's conduct. The children sometimes wanted to visit mother and sometimes did not.

In February 2014, DCFS recommended father have full physical and sole legal custody of the children and mother be awarded only monitored visitation.

### 4. *Jurisdictional Hearing*

The court continued the jurisdictional hearing multiple times, in part because mother had multiple attorneys. Although mother's attorney requested a continuance, mother opposed the continuance and told the court: "This is a kangaroo court. You guys are not defending the parents' rights here." Mother continued: "[Y]ou are not upholding the law, and this is a kangaroo court." Mother told the court that she would report to the judicial council. She stated that father "was the offending parent. I had nothing to do with the allegations that came into this court." When mother was asked to leave the

4

courtroom, she responded, "This is not fair. You guys will all hear from me. I will take this to the Supreme Court if I have to. [¶] As sure [as] I am standing here, this will go to the Supreme Court and everybody involved in this are going down."

At the next hearing the court read mother the definition of contempt and warned her that if she disrupted the proceedings she may be cited for contempt and may be excluded from the courtroom.

Then 16-year-old S.R. testified about an incident that happened when she was 13. According to S.R., mother hit Eh.R. Mother hit Eh.R. "[e]verywhere," "swinging" an extension cord. S.R. told Eh.R. to go to her room and mother punched S.R. in the mouth, causing her a swollen lip. Mother also choked S.R., scratching S.R.'s neck. S.R.'s adult sibling separated mother and S.R. S.R. never saw mother hit Ee.R. S.R. testified that she had only one other physical altercation with mother.

S.R. testified that Roy was mother's friend. Roy would drink alcohol to the point of inebriation around the children. The majority of time S.R. visited Roy with mother Roy was drunk. On those occasions, mother drank with Roy but was not drunk.

S.R. wanted to have conjoint therapy with mother to work out their issues. They had one conjoint therapy session but mother did not return after the single session. S.R. wanted to have weekend visits with mother.

Then 13-year-old Eh.R. testified mother sometimes hit her with long cords. Eh.R. testified that mother hit her only in the leg (not all over as S.R. had testified). Eh.R. saw mother hit S.R. twice.

Eh.R. described Roy as mother's boyfriend. When Ee.R. asked for water, Roy pulled Ee.R. by the shirt and sat him on the couch and told him not to whine. Mother counseled Roy not to touch Ee.R. Roy drinks alcohol, and then acts "weird" and slurs his speech. Eh.R. went with mother to Roy's house after the judge told mother not to allow the children to have contact with Roy. But Roy and mother would stay in the car while the children played in the house.

Ee.R. testified that he saw mother and S.R. fight and wrestle on the floor. Ee.R. testified that he felt safe with father but sometimes was afraid of mother. When pressed, he testified that he was afraid mother would put him in the corner.

Jatika Williams, a social worker, testified that mother's mental condition posed a continuing risk to the children. Mother had been diagnosed with depression and general anxiety. DCFS was concerned that mother had not tested for controlled substances and that she violated a court order regarding Roy. Although Ee.R. appeared to have a close relationship with mother, both Eh.R. and S.R. wanted to live with father. DCFS was also concerned that Roy touched Eh.R. in a sexual manner.

Mother testified that she had only one physical altercation with S.R. and she was acting in self-defense. S.R. had been diagnosed with oppositional defiant deficiency syndrome. Mother denied striking Eh.R. with an extension cord. Mother denied continuing to take the children to Roy's home after the court ordered her to keep Roy away from the children. Later she acknowledged taking the children there but indicated that the children were not left alone with Roy. Mother explained that she had to leave her home because she had a restraining order against father. Mother testified that she had been diagnosed with depression and was currently taking medication. Mother testified that she did not have an "alcohol problem" and did not use drugs.

The court declared the children dependents of the juvenile court. The court ordered the children removed from mother. The court found that by clear and convincing evidence there was a substantial danger of returning the children to mother's care and that there was no reasonable means to protect the children without removing them from mother's custody.

When the court made its order, mother stated, "[t]his is a kangaroo court." Mother later interrupted the court stating, "Just tell me what he says. This is a kangaroo court. It has no rules." When the court asked mother to step outside, mother continued, "This is a kangaroo court. I can't even believe this."

6

The court terminated jurisdiction with a family law order.  The court ordered that, prior to modifying the family law order, mother complete a parenting course, anger management course, and individual counseling with a licensed therapist.

## DISCUSSION

On appeal, mother emphasizes that the sustained findings concerned physical abuse to S.R. only and violation of a noncontact order with Roy.  Mother argues that there was no clear and convincing evidence that Eh.R. and Ee.R. faced substantial danger if they remained in her custody.

The law requires that a child remain in parental custody pending the resolution of dependency proceedings, despite the problems that led the court to take jurisdiction over the child, unless the court is clearly convinced that such a disposition would harm the child.  The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children.  (*In re Henry V*. (2004) 119 Cal.App.4th 522, 525.)

"The standard of review of a dispositional order on appeal is the substantial evidence test, 'bearing in mind the heightened burden of proof.'  [Citations.]  The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the court's findings or orders.  [Citation.]  On appeal, we do not pass on the credibility of witnesses, resolve conflicts in the evidence or weigh the evidence.  Instead, we review the record in the light most favorable to the juvenile court's order to decide whether substantial evidence supports the order."  (*In re A.E.* (2014) 228 Cal.App.4th 820, 826.)  "[J]urisdictional findings are prima facie evidence the child cannot safely remain home."  (*In re Hailey T*. (2012) 212 Cal.App.4th 139, 146.)

Here, the record supported the finding that there would be a substantial danger to Eh.R. and Ee.R. if they were returned to mother's care.  Although the juvenile court did not sustain the allegations that mother physically abused Eh.R. and Ee.R., the record indicated that mother was not able to control her anger and repeatedly resorted to inappropriate conduct.  Mother's conduct forced DCFS to move Ee.R.'s foster home multiple times.  Even in the courtroom, mother was unable to control her anger and

7

yelled at the judge. Mother's inability to control her anger supported the inference that Eh.R. and Ee.R. were at risk even though mother had physically abused only S.R.

Additionally, mother violated a court order prohibiting the children to have contact with Roy even though she knew Roy was an alcoholic and the children were afraid of him. The order was put into place to ensure the children's safety and mother's violation of it supported the finding that returning them to mother's care may jeopardize their safety. Mother may seek a modification of the custody order once she completes an anger management course, parenting course, and individual counseling from a licensed therapist.

In *In re Mariah T.* (2008) 159 Cal.App.4th 428, this division affirmed a dispositional order removing mother's two children from her care after mother's live-in boyfriend sexually abused one child, and the children reported that mother would hit them with a belt to punish them. (*Id*. at p. 431.) Mother had minimized her actions and denied the sexual abuse. (*Id*. at p. 441.) We concluded that under such circumstances, the juvenile court could reasonably disbelieve mother's testimony that she would not continue to use corporal punishment. (*Ibid*.) Similarly here, mother minimized her conduct, rationalizing the abuse of S.R. as a matter of self-defense and the visit to Roy's as necessary. From mother's testimony the court could have inferred that mother would not modify her behavior and leaving Eh.R. and Ee.R. in her care placed them at risk of harm.

The authority mother cites does not support her argument that reversal of the dispositional order is required. *In re J.K.* (2009) 174 Cal.App.4th 1426 involved a challenge to the court's jurisdictional finding. The appellate court affirmed jurisdiction based on evidence that father had raped his daughter six years prior to the filing of the petition and dislocated her shoulder two years prior to the filing of the petition. (*Id*. at p. 1439.) The court concluded that the physical abuse two years prior to the petition was "not so remote that it can be ignored." (*Ibid*.) The appellate court did not consider the juvenile court's dispositional order, and the case therefore does not support mother's argument that the juvenile court erred in removing Eh.R. and Ee.R. from her care.

8

Mother's reliance on *In re Henry V., supra*, 119 Cal.App.4th 522 also is misplaced.  In *In re Henry V.* the appellate court reversed a juvenile court's dispositional order because it concluded that the single incident of physical abuse, which involved burning a child with a curling iron, was not considered an obstacle to reunification and the bonding study that the court wanted completed before Henry returned home could have been performed while he resided at home.  (*Id*. at p. 529.)  The court emphasized that mother was "fully cooperative in taking advantage of the services that had been offered to her."  (*Id*. at p. 529.)  Moreover the record failed to show that the juvenile court had applied the correct standard in removing Henry from his mother's custody.  (*Id*. at p. 530.)  In contrast here, the court applied the correct standard.  This case also is distinguishable from *Henry V*. because here mother did not admit responsibility and did not complete courses offered to her.

## DISPOSITION

The juvenile court's dispositional order is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


RUBIN, J.