Filed 1/19/16  In re Sergio H. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SEVEN

| | |
|---|---|
| In re SERGIO H., a Person Coming Under the Juvenile Court Law. | B261164 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK06626) |
| Plaintiff and Respondent, | |
| v. | |
| SERGIO H., SR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Terry Truong, Juvenile Court Referee.  Affirmed.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Tyson B. Nelson, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

Sergio H. appeals from the juvenile court's disposition order removing his son Sergio from Sergio H.'s custody and placing him with his mother. Sergio H. argues that the court's order was not supported by substantial evidence and that the court failed to adequately state the factual basis for removing the child as required by Welfare and Institutions Code section 361, subdivision (d).[1] Because substantial evidence supports the juvenile court's finding that Sergio would be at risk of physical and emotional harm if he remained in his father's custody, and because any error resulting from the court's failure to comply with section 361, subdivision (d) was harmless, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *The Family*

Sergio H. and V.M. have two children, Sergio and M.J., who were 10 and 15 years old, respectively, at the time of the contested disposition hearing on December 18, 2014.[2] V.M. also has an older daughter, Andrea, from a prior relationship.

Sergio H. and V.M. divorced in 2008. They have a history of domestic violence, including an incident in November 2006 when they were separated but still living in the same house, in which Sergio and M.J. witnessed their father choke, push, kick, and punch their mother. Andrea called 9-1-1 at her mother's request and the police subsequently arrested Sergio H. for spousal abuse. V.M. had called the police on a prior occasion

---

[1]     All statutory references are to the Welfare and Institutions Code.

[2]     While the juvenile court removed both Sergio and M.J. from their father's custody, Sergio H. appeals only the removal of Sergio. On June 18, 2015 this matter was transferred to the San Diego County Superior Court.

when Sergio H. had become violent with her, but Sergio H. claimed V.M. had attacked him first, and she was arrested. V.M. was subsequently afraid to call the police when Sergio H. abused her.

Following the divorce, the family court awarded Sergio H. sole custody of Sergio and M.J., and V.M. moved to San Diego. V.M. testified that, at that time, Sergio H. was a good father. Sergio H. admitted he had hit Sergio when he was three years old and he had hit or spanked M.J. when she was five years old. Sergio H. testified that, other than those incidents, he did not use corporal punishment on his children but he did "threaten them all the time."

B.      *The Detention and Subsequent Investigation*

Prior to 2014, the Los Angeles County Department of Children and Family Services had received several reports of alleged child abuse in the home of Sergio H. In 2013 M.J. twice threatened to kill herself, once after an altercation with her father. Sergio H. called 9-1-1 and M.J. was subsequently hospitalized and placed on a 72-hour psychiatric hold. In April 2013 the Department recommended voluntary family maintenance services for the family.

On July 25, 2014 M.J. ran out of her house and asked an unrelated person sitting in a nearby car to call the police because her father had punched her in the face. According to subsequent interviews with M.J., Sergio H., and Sergio, the altercation began when Sergio H. asked M.J. to put the family cats outside in a cage before he fumigated the home. M.J. became upset and began to yell at her father using profanities. M.J. told the police that her father had grabbed a shirt and hit her with it, causing her to fall on the couch, where he punched her several times with a closed fist in her face and torso area. Sergio H. admitted he hit M.J. with a t-shirt but said he only "smacked" her with open hands on her arms but may have hit her unintentionally in the face as she was

3

moving around. Sergio, who witnessed the incident, generally confirmed his father's version of events.

The police officer who interviewed M.J. reported she had a bruise under her left eye. Sergio H. told the officer that, if his daughter were not placed in "jail or a foster home," he would continue to "smack her" until she stopped misbehaving.

A social worker sent by the Department interviewed M.J. and Sergio separately at the police station. M.J. told the social worker that her father "always hit her when she does something he does not like," and that, although her father had hit her with a belt about a year earlier, she had never seen her father hit Sergio. M.J. said she was afraid of her father and did not want to return home with him. Sergio told the social worker he had not seen his father hit M.J. in the past. He said that his father "yells" at him, but "never hits me because I behave." When Sergio saw his sister at the police station he became angry and asked her why she had reported their father to the police. "You triggered him," he said, "you always do that." Sergio told the social worker that his father has "anger problems but [his sister] triggered him."

That night the social worker interviewed Sergio H. at his home along with a Los Angeles police officer. When told that his children would be detained, Sergio H. said, "Put my daughter in jail and leave my son with my mom." The police officer then arrested Sergio H. on an outstanding felony warrant for possession of methamphetamine.

The Department initiated an investigation into possible child abuse and neglect that included interviews with V.M., Sergio H., M.J., Sergio, the maternal and paternal grandmothers, and M.J.'s therapist. V.M. told the Department that she had been "bullied" and "tricked" into giving up custody of her children and that she stopped having monitored visits with them after Sergio H. threatened to kill her and her mother. She said she had recently been visiting them secretly with the help of their paternal grandmother and communicating with M.J. on Facebook. V.M. said that Sergio H. "treats [M.J.]

4

badly," and that Sergio "is not treated as bad as [M.J.] is," and she wanted both of her children to live with her.

Sergio H. told the Department that V.M. was physically abusive with him and he denied ever hitting her. He admitted he had hit M.J. with a belt when she was five years old and had used corporal punishment on another occasion two years ago when M.J. had "disrespected" his girlfriend. He also admitted that he had stopped giving M.J. the psychotropic medication prescribed by her doctors because he did not think she needed it. He denied having a history of substance abuse but admitted that he had been drinking beer daily since his children had been detained.

The children's paternal grandmother told investigators, "I don't know nothing. I only know this is not the first time Sergio hit Mary. I live in the front, and last year they lived in the back house. I saw him hit her with a belt. I told him to stop, but he said he does what he wants. A few months ago she told me that he started hitting her again. The night the children were taken, he called me and said he was going to kill me. He thought I had the children."

M.J. received individual counseling and services for autism and depression. Her therapist told the Department that she had received a text from Sergio H. stating that he had hit M.J. in the past and would hit her again if she disrespected him. The therapist said she was aware that Sergio H. was not giving M.J. her medication because he thought she was doing well without it.

The Department also searched for prior arrests and convictions of both parents. The Department learned that in May 2012 Sergio H. was arrested for threatening M.J.'s ex-boyfriend and his female cousin. According to the police report, M.J. had a physical fight with her ex-boyfriend's cousin. After M.J. identified the individual to her father while they were driving in his car, her father pulled a knife from under the seat and chased after the individual. When M.J. asked him why he had a knife, Sergio H. said, "to stab her, no one hurts my little girl." M.J. also reported that Sergio H. had threatened to

harm her ex-boyfriend, telling her that he was "going to take care of him" and telling the ex-boyfriend, "I know where you live."

In October 2013 Sergio H. was arrested for possession of methamphetamine. He denied that the drugs belonged to him, but said he told the police they were his so that the police would not tow his car. He said he ultimately pleaded guilty to the crime in order to avoid losing his children. He denied any substance abuse.

Based on its investigation, the Department concluded that there was reason to believe that Sergio H. physically abused M.J., failed to provide M.J. with prescribed medication, had a history of substance abuse, had engaged in physical altercations with V.M., and had unresolved anger issues. The Department concluded the children were at "Very High risk."

The Department made five recommendations for services and programs for Sergio H. in order to "prevent the need for further detention and/or facilitate future return" of the children to their father: (1) participation in Department-approved parenting education; (2) participation in individual counseling to address child safety issues, including "severe neglect, drug awareness, domestic violence and personal responsibility"; (3) participation in "random/on-demand drug/alcohol screening"; (4) attendance at a Department-approved drug rehabilitation program; and (5) attendance in anger management classes. The juvenile court ordered the Department to provide Sergio H. with referrals to these programs and to drug testing, and conditioned Sergio H.'s visitations with Sergio on three consecutive clean tests.

The Department provided the referrals to Sergio H. and attempted to make arrangements for him to receive the court-ordered services but he claimed he "was busy." He agreed to take a drug test on August 21, 2014 but never showed up for the test despite the social worker's agreement to change the test date and location to make it convenient for him. Sergio H. also failed to appear for drug testing on September 12, 2014 and October 14, 2014, and he refused to participate in an interview with an assessor from the

6

Department's Multidisciplinary Assessment Team. In a text message to a Department social worker, Sergio H. stated that he was "done helping your agency hurt my family" and he referred to Department employees as "Satan's helpers."

The Department filed a first amended petition under section 300 alleging that the children were at risk of physical and emotional harm due to (1) the incidents of physical abuse on July 25, 2014 and on the prior occasion when Sergio H. had hit M.J. with a belt; (2) Sergio H.'s failure to provide M.J. with prescribed psychotropic medication; (3) the history of domestic violence between the parents and the exposure of the children to other violent altercations; and (4) Sergio H.'s unresolved history of substance abuse. The petition sought orders declaring Sergio and M.J. dependents of the juvenile court and removing them from the custody of their father, and requested family reunification services for Sergio H.

### C.    *The Disposition Hearing*

On December 18, 2014 the juvenile court held a combined contested jurisdiction and disposition hearing at which Sergio H. and V.M. testified.[3] Sergio H. again admitted to hitting M.J. on July 25, 2014 and approximately five years earlier but denied hitting or choking her at any other times, as M.J. claimed. With regard to the incident on July 25, 2014, Sergio explained that he hit M.J. "[b]ecause she was misbehaving. She was disrespecting me. She was telling me she was going to kill me. I had been fed up with her. I had told her counselor two weeks prior that Mary has been escalating and I needed help with her. And, basically, you know, I just couldn't handle her no more."

---

[3]    The juvenile court concluded that it had jurisdiction over Sergio and M.J. pursuant to section 300, subdivisions (a), (b), and (j). Sergio H. does not appeal that portion of the court's order.

When asked how he thought his physical discipline of M.J. affected Sergio, Sergio H. said, "It lets him know that if he does something wrong, he might get punished." Sergio H. explained that his son "knows that there's a three-step process. First, I give him a verbal, then a punishment. And then, if there's nothing else, then I have to smack him." Sergio H. stated that, other than when Sergio was three years old, he never had to go past the second step with Sergio. Sergio H. said he now understands that he should not have hit M.J. and that he made a mistake when he told the police that he would keep "smacking" her if she misbehaved. He admitted that he threatens his children "all the time, if they misbehave, they will get a spanking," but said that in the future he would not use corporal punishment on them.

With regard to his physical altercations with V.M. and others, Sergio H. said that "she scratches me up and then calls the cops." He referred to her in court as a "psycho bitch," which he said he calls her all the time but never in front of the children. He also said he never prevented V.M. from visiting with the children and never showed up to any of her court-ordered visitations with them. He denied threatening M.J.'s ex-boyfriend and his cousin, claiming that they lied to police.

Sergio H. also denied he abused drugs, and again denied that the methamphetamine found his car in 2013 was his. He testified that, at the time of his arrest, he had not used methamphetamine for approximately 10 years, but he admitted he had been using other drugs, including cocaine to help him sleep, until he went to jail in 2013. Sergio H. stated that he stopped using drugs "cold turkey" while in jail in 2013 because his "body gave up." Sergio H. explained that he did not appear for scheduled drug tests because Department representatives gave him "the wrong time [and] the wrong schedule for the clinic." He said he had been drinking daily since the court had detained his children but that he stopped drinking about a month before the hearing because his doctor advised him not to drink alcohol while taking medication prescribed to treat his depression.

8

V.M. testified about the details of the 2006 incident that prompted Sergio H.'s arrest for spousal abuse. She said that following their divorce she was not concerned about her children's physical safety because "[b]ack then he was a good dad to them." She explained that "[h]e mistreated my oldest daughter [Andrea], but I always figured it was because . . . [she] wasn't his." V.M. testified that M.J. told her she was scared of her father and that he had hit her with his fists. V.M. said that Sergio H. appeared without permission at her scheduled visitations with Sergio and M.J. and that, as recently as the family's previous court appearance in September 2014, he verbally threatened her in the presence of a bailiff. At the disposition hearing V.M. requested a temporary restraining order against Sergio H. for the protection of herself, M.J., and Andrea.

The court sustained the majority of the section 300 petition, finding by clear and convincing evidence that returning the children to Sergio H. would present a substantial danger to their "physical health, safety, protection, or physical or emotional well-being, and there are no reasonable means by which their physical health can be protected without removing them from their father's physical custody." The court found true the allegations in the petition, as amended by the court, establishing Sergio H.'s physical abuse of M.J., substance abuse, and history of domestic violence.[4]

---

[4]     As amended, the sustained allegations included:

a-1, b-1, j-1: "On [July 3, 2014], and on prior occasions, the children, [M.J. H.] and Sergio [H.] Jr.'s father, Sergio [H.] Sr., physically abused the child, [M.J.], by striking the [child's] arms, chest and face with the father's hands, inflicting bruising to the child's eye. The father struck the child with a t-shirt and grabbed the child, causing the child to fall to the couch. The father struck the child's face with the father's hands. On prior occasions, the father struck the child with a belt. Such physical abuse was excessive and caused the child unreasonable pain and suffering. Such physical abuse of the child by the father endangers the child's physical health, safety and well-being and places the children and the child's sibling, Sergio, at risk of physical harm, damage and physical abuse."

9

The court further found that Sergio H. is "a classic domestic violence perpetrator" and that "there is no indication to this court that he would stop his action now, given what has been testified to by the mother." The court found the majority of Sergio H.'s testimony not credible and that he was "very defensive and in denial about his children and what his actions have done to his children." With regard to Sergio, the court stated, "I have no doubt that Sergio loves his father and is biased towards his father. . . . I believe . . . that he wants to go back to his father, but I cannot accept everything Sergio says as well as everything that happened in that home."

The court removed the children from Sergio H. and placed them with their mother, finding that "[r]easonable efforts were made to prevent and eliminate the need for the removal." On his way out of the courtroom, Sergio H. said, "mother fuckers . . . I should

---

b-2: "The child, [M.J. H.] has been diagnosed with Autism and Depression. The father, Sergio [H.] Sr., failed to regularly provide the child with the child's prescribed psychotropic medication. Such medical neglect of the child on the part of the father endanger[s] the child's physical health and safety and place[s] the child at risk of physical harm, damage, danger, and medical neglect."

b-4: "The children [M.J. H.] and Sergio [H.]'s father, Sergio H. and mother [V.] M. have a history of domestic violence and engaging in violent altercations. Further, on or about 11/08/2006, the children were exposed to a violent altercation in which father choked, pushed, kicked, and punched mother, and mother pulled father's shirt and scratched father's arm. Further, on or about 05/31/2012, the child [M.J.] was exposed to a violent episode in which father verbally threatened physical harm to an unrelated child, and chased an unrelated adult with a knife down the street. On prior occasions, the father threatened to harm the mother. Such violent conduct on the part of the children's father, Sergio [H.] against the mother endangers the children's physical and emotional health and safety and places the children at risk of physical and emotional harm."

b-5: "The children [M.J. H.] and Sergio [H.]'s father, Sergio [H.], has an unresolved history of substance abuse, which renders the father unable of providing regular care for the children. The father's unresolved history of substance abuse endangers the children's physical health and safety, and places the children at risk of harm."

10

wear a dress." In his absence, the court granted V.M.'s request for a temporary restraining order.

Sergio H. timely appealed. He argues that substantial evidence does not support the court's disposition order.[5] He also argues that the court violated section 361, subdivision (d), by failing to make factual findings in support of its conclusion that "reasonable efforts were made to prevent and eliminate the need for the children's removal," and by failing to "state the facts" on which its decision to remove Sergio was based.

## DISCUSSION

### A. *Standard of Review*

A child may not be taken from a parent's physical custody during dependency proceedings unless "'there is clear and convincing evidence of a substantial danger to the child's physical health, safety, protection, or physical or emotional well-being *and* there are no "reasonable means" by which the child can be protected without removal.'" (*In re Dakota J.* (2015) 242 Cal.App.4th 619, 629.) "Removal on any ground not involving parental rejection, abandonment, or institutionalization requires a finding that there are no reasonable means of protecting the child without depriving the parent of custody." (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1013, fn. 3; see § 361, subd. (c).)

We review a challenge to the sufficiency of the evidence supporting a disposition order for substantial evidence. (*In re K.B.* (2015) 239 Cal.App.4th 972, 979.) ""In making this determination, we draw all reasonable inferences from the evidence to

---

[5]    Sergio H. also states in his opening brief that the "sustained allegations were insufficient to warrant removal of Sergio" from his custody. His argument, however, is that the evidence was insufficient to support the juvenile court's finding that Sergio was at risk of physical abuse, not that the sustained allegations did not support removal.

11

support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court."'" (*In re I.J.* (2013) 56 Cal.4th 766, 773; see *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451 ["[w]eighing evidence, assessing credibility, and resolving conflicts in evidence and in the inferences to be drawn from evidence are the domain of the trial court, not the reviewing court"].) We "'"review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find that the order is appropriate."'" (*In re I.J.*, *supra*, 56 Cal.4th at p. 773.) The jurisdiction findings are prima facie evidence the minor cannot safely remain in the home. (§ 361, subd. (c)(1); *In re T.V.* (2013) 217 Cal.App.4th 126, 135.) "The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the court's findings or orders." (*In re A.E.* (2014) 228 Cal.App.4th 820, 826.)

B.    *Substantial Evidence Supports the Court's Disposition Order*

Sergio H. argues that substantial evidence does not support the court's disposition order because (1) it is undisputed that he had not hit Sergio since Sergio was three years old; (2) there was no evidence that his substance abuse impacted Sergio in any way or that he used drugs around the children; and (3) his "problematic relationship" with V.M. did not place Sergio in danger. Sergio H. also contends that the court did not give sufficient weight to the fact that Sergio said he wanted to live with his father.

A juvenile court may remove a child from his parent's custody without first finding that the parent is dangerous or that the minor has been actually harmed. (*In re J.S.* (2014) 228 Cal.App.4th 1483, 1492.) Removal is proper under section 361 where "'return of the child would create a substantial risk of detriment to the child's physical *or*

12

emotional well-being.'" (*In re H.E.* (2008) 169 Cal.App.4th 710, 720.) "Domestic violence impacts children even if they are not the ones being physically abused, 'because they see and hear the violence and the screaming.'" (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 134.) Thus, "'domestic violence in the same household where children are living *is* neglect; it is a failure to protect [them] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it.'" (*In re S.O.* (2002) 103 Cal.App.4th 453, 460-461; see *In re M.W.* (2015) 238 Cal.App.4th 1444, 1453-1454.)

Substantial evidence supports the juvenile court's finding that Sergio faced substantial danger to his physical health, safety, protection, or physical or emotional well-being if returned to his father's custody. Sergio H. admitted he had hit Sergio in the past and had used excessive disciplinary methods on M.J. more recently. Such conduct put Sergio at risk of future physical harm. (See *In re Cole C.* (2009) 174 Cal.App.4th 900, 916 ["[child] remains at risk of suffering serious harm because [father] implemented excessive disciplinary methods on [child's half siblings]"]; see also *In re E.B.* (2010) 184 Cal.App.4th 568, 576 [past violent behavior is predictor of future violence].) Sergio was also threatened with physical punishment and witnessed domestic violence in his home, which subjected him to a risk of "encountering the violence" and emotional harm. (*In re T.V.*, *supra*, 217 Cal.App.4th at p. 135; see *id.* at p. 136 [removal warranted where parents engaged in a pattern of domestic violence, "some of which [their daughter] heard or saw," thus placing her at substantial risk of harm]; *In re H.E., supra*, 169 Cal.App.4th at p. 721 [court may "protect [a] younger sibling" from the same type of emotional harm suffered by her older sister even before "actual harm develop[s]"].)

Sergio H.'s unwillingness to cooperate with the Department and to accept responsibility for his actions underscores the danger to Sergio. (See *In re T.V.*, *supra*, 217 Cal.App.4th at p. 136 [noting that the father had not addressed anger issues or taken responsibility for domestic violence]; *In re Cole C.*, *supra*, 174 Cal.App.4th at p. 918 [father's failure to participate in service referrals supported inference of risk of future

13

harm].)  Among other things, Sergio H. failed to show up for scheduled drug tests, sent aggressive text messages to social workers, and refused to let members of the Department's Multidiscipline Assessment Team interview or work with him.  At the hearing, he purported to express some remorse (which the court did not believe) when he stated he "made a mistake of hitting [M.J.] when I shouldn't have," but he also said "you guys are going way overboard," called the participants "mother fuckers," and, as he stormed out of the hearing, suggested that the outcome would have been different had he been a woman.  Sergio H. also continues to deflect responsibility for his actions and blame his victims.  In his briefs, he argues that Sergio would be safe with him in part because Sergio "knew how to avoid triggering behavior."  Such arguments confirm Sergio H.'s testimony that he had not hit Sergio since he was three years old because Sergio was well-behaved, not because Sergio H. believed excessive physical punishment was wrong.

Sergio H. relies on *In re A.E.* (2014) 228 Cal.App.4th 820, where the court reversed an order removing a child from her father's custody after he spanked her with a belt on a single occasion.  *In re A.E.* is readily distinguishable.  In that case the risk of future abuse was minimal, and the father expressed remorse and was committed to learning better discipline methods.  (*Id.* at p. 826.)  Moreover, the parents in *In re A.E.* had no history of domestic violence, and neither parent had a substance abuse problem or mental health condition.  (*Id.* at p. 827.)  The Department credited the family for being "cooperative, motivated to solve problems, willing to accept service from [the Department], and willing to change."  (*Ibid.*)

None of those mitigating circumstances exists here.  The record in this case includes multiple instances of domestic violence and other violent altercations.  Sergio H. also has a history of substance abuse and is suffering from depression, and he has failed to express sincere remorse or cooperate with the Department's efforts to provide him with referral services.  Here, unlike *In re A.E.*, there is substantial evidence to support the

14

juvenile court's finding that Sergio's physical health, safety, protection, or physical or emotional well-being would be endangered if he returned to his father's custody.

C.    *Any Error Resulting from the Juvenile Court's Failure To Comply with Section 361 Was Harmless*

Section 361, subdivision (d), provides "[t]he court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home . . . .  The court shall state the facts on which the decision to remove the minor is based."  This mandate ensures that the "reasonable efforts" requirement of section 361 does not become "merely a hollow formula designed to achieve the result the [Department] seeks."  (*In re Ashly F.* (2014) 225 Cal.App.4th 803, 810.)

Sergio H. argues that the juvenile court's "summary" finding that there were no reasonable means of protecting Sergio without removing him from his father's custody failed to consider Sergio's "unique circumstances" that Sergio H. had not (yet) physically harmed Sergio, as Sergio H. had harmed M.J.  Relying on *In re Ashly F.*, *supra*, 225 Cal.App.4th 803, Sergio H. argues that the juvenile court erred by not considering "less drastic" alternatives to removal, such as unannounced Department visits, a court-ordered family maintenance plan, compliance with drug testing, and individual counseling and parenting classes.

To the extent the juvenile court's statements were not sufficient under section 361, subdivision (d), however, any such error was harmless.  "Before any judgment can be reversed for ordinary error, it must appear that the error complained of 'has resulted in a miscarriage of justice.'  [Citation.]  Reversal is justified 'only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been

15

reached in the absence of the error.'" (*In re J.S.* (2011) 196 Cal.App.4th 1069, 1078.) Failure to comply with a statutory requirement is harmless where there is no reasonable probability that the error affected the outcome. (*Id.* at p. 1079.)

In *In re Ashly F.* the Department failed to include in its reports "'[a] discussion of the reasonable efforts made to prevent or eliminate removal,'" and there was no discussion of reasonable efforts in the record. (See *In re Ashly F.*, *supra*, 225 Cal.App.4th at p. 809.) Moreover, the mother in *Ashly F.* had expressed remorse for the injuries she inflicted on one of her children, and she and the father had enrolled in a parenting class. (*Ibid.*) The court in *Ashly F.* concluded, "On the record in this case there is a reasonable probability that had the juvenile court inquired into the basis for the claims by [the Department] that despite its efforts there were no reasonable means of protecting the children except to remove them from their home the court would have found that claim was not supported by clear and convincing evidence." (*Id.* at p. 811.)

In contrast, the Department in this case identified a variety of measures to prevent removal and attempted to implement them, all without success. In particular, the Department's detention report lists five "available services/referral methods which could prevent the need for further detention and/or facilitate future return of the child(ren) to parents/legal guardians." The court ordered the Department to provide these services and referrals to Sergio H., but Sergio H. either failed to take advantage of them or actively prevented the Department from providing them. He reaffirmed his intransigence at the disposition hearing, stating that he would submit to drug testing only after the Department corrected its allegedly inaccurate statements and stating that "anybody that works with child services" is "Satan's helper." Thus, unlike *In re Ashly F.,* there is no reasonable probability in this case that the juvenile court would have identified any reasonable means of protecting the children short of removal. (*In re Ashly F.*, *supra,* 225 Cal.App.4th at p. 811.) Therefore any error in failing to comply with section 361, subdivision (d), was harmless.

16

**DISPOSITION**

The order is affirmed.


SEGAL, J.

We concur:


ZELON, Acting P. J.


BLUMENFELD, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.