Filed 7/9/14  Certified for Publication 8/4/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.E., a Person Coming Under the Juvenile Court Law. | B252573 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JOSUE E.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. DK00333) |

        APPEAL from an order of the Los Angeles County Superior Court. Stephen Marpet, Commissioner.  Affirmed in part, reversed in part.

        Marsha F. Levine, under appointment by the Court of Appeal, for Appellant.

        Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Respondent.

_____

Josue E. (Father) appeals the juvenile court's order removing his three-year-old daughter, A.E., from his custody for a single occasion of disciplining A.E. by spanking her with a belt on her legs and buttocks. Father is remorseful and is committed to learning better child-rearing techniques. There is no prior history with the Los Angeles County Department of Children and Family Services (DCFS), no domestic violence, no criminal record, no substance abuse, and no medical or mental illness in the family. Father contends there is insufficient evidence to support the juvenile court's decision to keep him from the family home. We agree. Further, Karem E. (Mother) has voiced her disapproval of Father's conduct and affirmed she would not allow him to hit A. with a belt. Accordingly, we reverse the challenged order to the extent it requires Father to remain outside of the family home.

## FACTS

Father and Mother had A. in 2011, when they were 18- and 20-years old, respectively. They had been married since 2009 and recently moved to Los Angeles from Texas. On August 3, 2013, a neighbor reported hearing a child being hit or spanked. When Los Angeles County Sheriff's deputies investigated, they observed two five to six inch long red welts on the back of A.'s right leg and several more red welts on her buttock. Father admitted he struck A. with his belt because she was misbehaving. Mother denied knowing anything about the welts, but stated she noticed Father spank A. on the buttock once with his bare hand that day. Mother considered spanking to be an appropriate form of discipline. Father was arrested for child abuse and held in custody. A. stayed home with Mother.

In a statement to the police after his *Miranda*[1] advisement, Father wrote, "My child was misbehaving[;] it was the fourth time in less than an hour. She kicked me, tried to hit me with the belt and I, as a father, had to discipline her after talking to her making her understand that such actions are not going to be tolerated, I disciplined my daughter not for sport or fun but so that one day just as I thank my parents for their care for me,

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436.

2

she will do the same.  I disciplined her with my belt on her butt but as she moved, unwantingly [*sic*], I mistakenly hit her on her side."

In a phone interview, Father denied any previous investigations by the Department.  He also denied any history of domestic violence, criminal arrest, substance abuse, or medical or mental illness.  Father told the caseworker that "he works nights and sleeps during the day.  Today at 1:30 pm when he woke up[,] he heard his daughter talking back to mother who was in the kitchen preparing lunch.  Father verbally reprimanded her, [his] daughter began [to] cry, and she was sent to the bedroom.  When he went to check on her she continued to cry and was observed pushing the window screen out of its window frame.  He told [his] daughter to behave but she continued to cry and act out.  Father stated [his] daughter then left the bedroom and returned to the living room where she continued to act out.  Father stated he repeatedly told [his] daughter to behave or else he would have to hit her.  A. responded with a 'no' and kicked father on his lower leg.  She then went back to the bedroom, grabbed a belt that was on the bedroom fixture, and when he entered the bedroom she threw the belt at him.  Father stated he got the belt and then struck his daughter two times on her buttocks.  Father stated A. was naked since the time he woke up and was also naked during her acting out in the home and when he first struck her with the belt.  Father stated he then placed the belt on the kitchen table and instructed [his] daughter to pick up the toys from the living room floor.  A. responded to him with a 'no,' he warned her he was going to hit her again, but A. responded with a 'no' again.  Father got the belt from the kitchen table and attempted to strike her again on her buttocks.  A., however, moved to avoid being hit on the buttocks and got hit on her upper right thigh. Father stated he had no intentions to hit her on her upper right thi[gh], only her buttocks, because she was acting out."

Mother explained A. was not wearing clothes because she was being potty trained. She had been wearing underwear, but took it off when she went to the bathroom and failed to put it on again.  Mother and Father had previously spanked A. with an open hand, but Mother denied she or Father had ever hit A. with a belt before.  Miguel Martinez, Mother's uncle, lived with the family.  He told the caseworker Father and

3

Mother were good people and doing their best to raise A. He never saw them inappropriately discipline A. and this is the first time he heard of Father using a belt to discipline A. The caseworker failed to observe "any other safety concerns, noting the home to be in fair condition with plenty of food to meet the needs of a growing child."

A petition was filed under Welfare and Institutions Code[2] section 300, subdivisions (a) and (b) on August 7, 2013. As to both subdivisions, the petition alleged: "On 8/03/2013, the child A.[E.'s] father, Josue [E.], physically abused the child A., by repeatedly striking the two year old child's buttocks and leg with a belt, inflicting multiple red welts and bruising to the child's buttocks and thigh. Such physical abuse was excessive and caused the child unreasonable pain and suffering. On 08/04/2013, the father was arrested for Cruelty to a Child. Such physical abuse of the child by the father endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of physical harm, damage, danger and physical abuse." At the detention hearing, the juvenile court found a prima facie case had been made for detaining A. from Father and that she was a person described under section 300, subdivisions (a) and (b). The juvenile court further granted Father reunification services and monitored twice weekly visits. Mother was found to be a non-offending parent. A. remained in Mother's custody and Father was ordered to stay out of the family home.

In a jurisdiction/disposition report, DCFS noted the family was cooperative, motivated to solve problems, willing to accept service from DCFS, and willing to change. DCFS also noted A. was healthy and comfortable in the parents' presence. Father reported to DCFS that he was "willing to do whatever is necessary in order to reunify with his family." By August 15, 2013, he had purchased a book on parenting. He admitted, "I see the way I disciplined my kid wasn't as proper as I thought it was in the moment. If I would have known this then, I would have acted differently. I understand what I did was wrong. I didn't understand what she was trying to tell me. This is a trial and error for me. This is not a setback. This whole situation is helping me and my

---

**2** All further section references are to the Welfare and Institutions Code unless otherwise specified.

4

daughter grow." DCFS concluded that Father would benefit from parenting classes to learn to deal with a toddler as well as individual counseling to redirect his anger when she misbehaves in the future.

Mother observed that Father "cries because he can't see [A.] or talk to her. He has shown regret for what he has done." Mother affirmed she did not approve of Father's actions: "If I had known he was going to hit her with a belt, I wouldn't have let him. I don't agree with hitting with a belt. Getting hit 3-4 times with a belt is excessive. If I was there, I would have gotten between them and not let him hit her. Hitting [A.] with a belt isn't going to make it better and I don't think it's right." As a result, Mother understood why Father was not allowed in the home and why he needed to learn how to properly discipline A.

At the September 3, 2013 disposition hearing, the juvenile court heard testimony from Father and considered the DCFS reports. Father testified he hit A. with a belt because that was the way he had been disciplined and he thought that was the best way to discipline her. However, he had begun reading a parenting book and understood now that a young child like A. may misbehave because she is frustrated that she cannot communicate her needs. He also understood there were other methods of discipline such as giving her a time out, telling her she would not get any candy, or taking away something she liked. In future, he stated he would deny A. use of his iPhone as punishment when she was disrespectful or acting out. He also confirmed he was willing to take parenting classes although he had not yet enrolled. However, he had an appointment with one of them for that week.

The juvenile court sustained the section 300 petition as alleged against Father. It ordered Father to 52 weeks of parenting classes as well as a minimum of two monitored visits with A. per week. DCFS was ordered to provide appropriate family reunification services and look into allowing Mother to monitor Father's visits. If Mother was approved as a monitor, Father was permitted to see A. as much as could be arranged so long as he did not spend any overnight visits in the family home. Father timely appealed from the dispositional order.

5

## DISCUSSION

Father contends the removal of A. from his custody is unwarranted because clear and convincing evidence does not support the juvenile court's finding that there is a substantial danger to A.'s physical and mental well being if Father were allowed to stay in the home. We agree.

Section 361, subdivision (c)(1) limits the ability of the juvenile court to remove a child from the physical custody of his or her parents. To do so, the juvenile court must find by clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor" "and there are no reasonable means by which the minor's physical health can be protected . . ." This is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child. (§§ 300, 355, subd. (a); *In re Basilio T.* (1992) 4 Cal.App.4th 155, 169, limited on other grounds in *In re Cindy L.* (1997) 17 Cal.4th 15, 31-35.) "The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 525; see also *In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288.) "Clear and convincing evidence requires a high probability, such that the evidence is so clear as to leave no substantial doubt." (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 695.)

At the same time, jurisdictional findings are prima facie evidence the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate. (*In re Diamond H.* (2000) 82 Cal.App.4th 1127, 1136, disapproved on another ground in *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 748, fn. 6; *In re Jamie M.* (1982) 134 Cal.App.3d 530, 536.)

The standard of review of a dispositional order on appeal is the substantial evidence test, "bearing in mind the heightened burden of proof." (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1654; *In re R.V.* (2012) 208 Cal.App.4th 837, 849 .) The appellant

has the burden of showing there is no evidence of a sufficiently substantial nature to support the court's findings or orders. (*In re L. Y. L.* (2002) 101 Cal.App.4th 942, 947.) On appeal, we do not pass on the credibility of witnesses, resolve conflicts in the evidence or weigh the evidence. Instead, we review the record in the light most favorable to the juvenile court's order to decide whether substantial evidence supports the order. (*In re Isayah C., supra*, 118 Cal.App.4th at p. 694.)

With these guidelines in mind, we find the juvenile court's order removing A. from Father's physical custody is not supported by substantial evidence. The record does not support findings that there would be a substantial danger to A. if he returned home. Instead, it is clear that this was an isolated incident that is unlikely to recur. Evidence of past abuse, standing alone, does not meet the clear and convincing standard of proof required to justify her removal from Father's physical custody. (See *In re Rocco M.* (1991) 1 Cal.App.4th 814, 824 ["'the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; "[t]here must be some reason to believe the acts may continue in the future." [Citations.]'"]; see also *In re. J.N.* (2010) 181 Cal.App.4th 1010, 1023.)

Section 361 requires ongoing or future danger to A. County Counsel argues that "Father's hitting of a two-year-old with a belt, combined with his profound lack of understanding of child development, create a risk to A. that cannot be immediately ameliorated with his removal from the home." We disagree.

The record in this case shows the risk to A. of future abuse is low. Father expressed remorse and is committed to learning better discipline methods. He testified that he understood a young child like A. may misbehave because she is frustrated that she cannot communicate her needs. He also understood there were other methods of discipline such as giving her a time out, telling her she would not get any candy, or taking away something she liked. That is not substantial evidence of a "profound lack of understanding of child development." It is quite the opposite.

Further, Mother affirmed she would not have allowed Father to strike A. with a belt. Mother stated she would have stood between Father and A. to prevent it. There is

7

abundant evidence that Father and Mother are good parents who enjoy a healthy relationship. There is no evidence of ongoing domestic violence between the parents; indeed there is no evidence of any domestic violence between the parents during their marriage. Neither parent has substance abuse problems or mental health conditions, developmental delays or other social issues that often are at the root of dependency cases and might place children at continuing risk in the home. DCFS acknowledged that Mother and Father are good parents and there are no safety issues with their home. Indeed, DCFS credited the family for being cooperative, motivated to solve problems, willing to accept service from DCFS, and willing to change. DCFS also noted A. was healthy and comfortable in her parents' presence.

Given all the circumstances presented here, the evidence with respect to the risk of harm to A. if Father were allowed back to the home, does not satisfy the requisite "clear and convincing" standard of proof. Further, there may be less drastic alternatives than an order requiring Father to leave the home. For example, the court in *In re Henry V., supra,* 119 Cal.App.4th at page 529 suggested a child may be protected from harm without removing him or her from the parent's custody by imposing stringent conditions of supervision by the agency. In such cases, "unannounced visits and public health nursing services [are] potential methods of supervising an in-home placement." (*In re Henry V.*, *supra*, at p. 529, see also *In re Jeannette S*. (1979) 94 Cal.App.3d 52, 60.)

## DISPOSITION

The disposition order of September 3, 2013, is reversed to the extent it requires Father to remain outside of the home. The remaining findings and orders made by the juvenile court on that date are otherwise affirmed.

BIGELOW, P. J.

We concur:

RUBIN, J.

GRIMES, J.

8

Filed: 8/4/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.E., a Person Coming Under the Juvenile Court Law. | B252573 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK00333) |
| Plaintiff and Respondent, | **ORDER CERTIFYING PUBLICATION** |
| v. | (No Change in Judgment) |
| JOSUE E., | |
| Defendant and Appellant. | |

THE COURT*:

The opinion in the above entitled matter filed on July 9, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

* BIGELOW, P. J.          RUBIN, J.          GRIMES, J.