Filed 10/3/14  In re Em. H. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Em.H., a Person Coming Under the Juvenile Court Law. | B254160 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK57697) |
| Plaintiff and Respondent, | |
| v. | |
| E.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Veronica McBeth, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

E.H. (mother) appeals the juvenile court's dispositional order, which removed her youngest child, Em.H., from her custody.  Mother contends the order is not supported by substantial evidence, and the court did not consider reasonable means available to protect the child while in mother's custody.  We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

The family's extensive dependency history has been the subject of several opinions.[1]  We borrow relevant facts from the most recent one.  "[I]n 1998 father was convicted of willful cruelty to mother's child from another relationship, and mother failed to reunify with that child.  The parents' two oldest children together, A.H. and Wi.H., were dependents of the court between 2005 and 2007, due to father's earlier abuse of their half sibling. . . .  [¶] Since 2011, the parents' six oldest children have been the subjects of an open dependency case, based on sustained allegations that father hit A.H. in the face with his fist, mother failed to protect her, and both parents regularly gave her beer to drink.  S.H., the parents' seventh child, was declared [a] dependent of the court after his birth in 2012, based on the sustained allegations in his older siblings' case. . . .  In March 2013, the court terminated reunification services as to the six older children, but did not return the children to the parents' custody due to their insufficient progress, father's disruptive behavior through most of the case, and mother's continued submissiveness to his control. . . ."  (*E.H. v. Superior Court*, *supra*, at pp. 2–3.)

In April 2013, five-year-old J.H. and three-year-old Wa.H. reported that during an unmonitored visit at mother's home, father showed them a gun and threatened to kill their foster mother.  Two-year-old El.H.'s foster mother reported him saying that father hit him, mother, and Wi.H., but the social worker could not get a meaningful statement from

---

[1] See *E.H. v. Superior Court* (Aug. 29, 2014, B255970 [nonpub. opn.]); *In re A.H.* (July 16, 2014, B251288 [nonpub. opn.]); *In re S.H.* (Dec. 11, 2013, B245942 & B248323 [nonpub. opns.]); *In re A.H.* (July 20, 2012, B236022 [nonpub. opn.]); *In re B.H.* (July 31, 2009, B211691 [nonpub. opn.]; *Jeffrey H. v. Superior Court* (June 13, 2006, B189786 [nonpub. opn.]).  Em.H.'s father, J.H. (father), is not a party to this proceeding, but will be referred to as needed.

El.H. The Department of Children and Family Services (DCFS) petitioned that the parents' visits with the children be monitored.

In August 2013, mother gave birth to the couple's eighth child, Em.H., who is the subject of this appeal. The next day, father informed the social worker that he was willing to do whatever was necessary to have the children placed with mother. In late August, father reportedly returned to the family home after having been fired from his job at a hotel in the Skid Row area for fighting with a customer. On the advice of counsel, mother requested a team decision meeting (TDM) in September, during which she admitted she had been a victim of domestic violence throughout her marriage to father. Since mother claimed to have been home with the baby for 30 days after the birth, the social worker was concerned that mother and father appeared to be living under the same roof immediately before the TDM.

Mother agreed to check into a domestic violence shelter. Nevertheless, Em.H. was removed from her custody. Mother was allowed to have unmonitored visits with the baby at the shelter and monitored visits outside. At the jurisdictional hearing in November 2013, the court sustained DCFS's Welfare and Institutions Code section 300[2] petition alleging that father had struck Em.H.'s sibling A.H. and mother had failed to protect her; that father abused alcohol, that the parents had a history of domestic violence, and that they had given A.H. beer and wine to drink on a weekly basis.

A contested dispositional hearing regarding Em.H. took place in January 2014. Mother had participated in individual counseling, domestic violence classes, and parenting classes while staying at two shelters between September and December 2013. By the time of the hearing, she had returned to the family home and was not enrolled in any services. Mother testified she left father after he struck her in April 2013, and had not seen him outside of court since then. She maintained that was the only instance of physical abuse, but she admitted to having been a victim of father's angry outbursts, threats, and emotional and verbal abuse since 1997. Mother claimed she intended to

---

[2] Statutory references are to the Welfare and Institutions Code.

3

divorce father, but she had not been able to file for divorce because father had moved out of state and mother did not have his address. Ana T., who had known mother for four months and had spoken to her just a few times, had expressed interest in having the child placed in her home. Mother asked to be allowed to reside in Ana T.'s home with Em.H.

Mother's counsel argued there was no evidence of current risk to the child since mother had undergone a transformation. Counsel focused on mother's acknowledgment of the emotional abuse in her marriage, her participation in individual and domestic violence counseling, her nine-month separation from father, and her plan to divorce him. Counsel suggested that the court return Em.H. to mother's custody on condition that mother reside with Ana T., in case father returns to the state. Em.H.'s counsel was concerned the parents had only recently separated and mother was no longer receiving counseling. Counsel recommended that mother receive reunification services but that the child not be returned to her. DCFS recommended that neither parent receive reunification services and that the child remain at her current placement.

The court denied father reunification services, noting that its intent had been to deny mother services as well unless she showed she had changed. The court credited mother's testimony that she finally had realized she had been in a "seriously abusive relationship, and she allowed the man to harm her children." The court stated mother had to "take responsibility for that" and explained it was giving her a chance to "make that up." The court was not convinced the proposed living arrangement at Ana T.'s home would work because the two women did not know each other well enough, but it allowed Ana T. to have visitation with Em.H. so she could eventually qualify as a non-related extended family member. The court found placement in the family home would be "contrary to the child's welfare" and there was no reasonable means to protect the child without removal. Mother was ordered to complete domestic violence and parenting classes and individual counseling, and was allowed monitored visitation, to be liberalized at DCFS's discretion.

This appeal followed.

4

## DISCUSSION

Mother appeals the dispositional order removing Em.H. from her custody. "Before the court may order a child physically removed from his or her parent, it must find, by clear and convincing evidence, the child would be at substantial risk of harm if returned home and there are no reasonable means by which the child can be protected without removal. (§ 361, subd. (c)(1); *In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1653–1654.) The jurisdictional findings are prima facie evidence the child cannot safely remain in the home. (§ 361, subd. (c)(1).) The parent need not be dangerous and the child need not have been actually harmed before removal is appropriate. (*In re A.S.* (2011) 202 Cal.App.4th 237, 247.) We review the court's dispositional order for substantial evidence. (*In re Kristin H.*, at p. 1654.)" (*In re R.V., Jr.* (2012) 208 Cal.App.4th 837, 849.) Although we bear in mind the heightened burden of proof, we still view the record in the light most favorable to the juvenile court's order without reweighing the evidence, resolving conflicts, or redetermining credibility. (*In re A.E.* (2014) 228 Cal.App.4th 820.)

Mother relies on her own testimony that she realized she had been a victim of domestic violence, separated from father in April 2013, entered a domestic violence shelter in September, attended various programs, and planned to divorce father. While the court credited mother's testimony that she had realized her relationship with father had been abusive, the record does not unequivocally establish when that realization occurred. Although mother dates it to April 2013, she did not admit the domestic violence until September 2013, and she appears to have done so on the advice of counsel more than a month after Em.H.'s birth. The social worker reported that father lived in the family home from the end of August to at least mid-September, and mother was in the home until she entered a shelter after the September TDM. The report supports an inference that mother and father lived under the same roof after the child was born. Mother's claim that the evidence is speculative fails to convince because the social worker reported the parents' statements.

5

Mother's claim that she had made tremendous progress by the time of the hearing also is exaggerated.  The court found that while mother appeared to be on the right path, she had to complete additional programs and follow through with the divorce in order to be trusted to protect the baby.  By the time of the hearing in 2014, mother had left the domestic violence shelter and had returned to the family home.  Thus, she was neither in a structured environment nor in a supportive program.  Although father reportedly was out of state, there was no guarantee he would not return.  Mother repeatedly had failed to distance herself from father and to keep the children away from him.  That was why her visits with all the children had reverted to monitored visits.  Father's recurrent violent or erratic behavior and mother's long history of submissiveness to his control did not inspire confidence that she would be able to stand up to him or that she would follow through with her expressed plan to divorce him.  The removal of the child was not unreasonable under the circumstances.  The court gave mother the benefit of the doubt by allowing her to receive reunification services and establish a positive track record.

Mother claims the court did not consider reasonable alternatives, such as mother's plan at the TDM to change the locks on the family home or call the police if father tried to enter the home.  Those alternatives already had been rejected at the TDM because of mother's "demonstrate[d] . . . inability to distance herself from father," and at the time she had agreed to enter a domestic violence shelter.  The only alternative presented at the dispositional hearing was that mother and child be allowed to live at the home of Ana T. The court considered and rejected that alternative because mother and Ana T. hardly knew each other, having spoken only a few times over four months.  In light of the recent and superficial nature of the relationship, that alternative was hardly reasonable at the time of the hearing.  But the court encouraged Ana T. to develop a relationship with the child, allowing her to have visitation and allowing DCFS to assess her as a monitor for mother's visits.

The dispositional order is supported by substantial evidence and is reasonable in light of the record.

6

**DISPOSITION**

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:



WILLHITE, J.



MANELLA, J.

7