Filed 4/12/16  In re Baby Boy T. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re BABY BOY T., a Person Coming Under the Juvenile Court Law. | B261756 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK08361) |
| Plaintiff and Respondent, | |
| v. | |
| JULIE T. et al., | |
| Defendants and Appellants. | |

APPEAL from orders of the Superior Court of Los Angeles County, Julie Fox Blackshaw, Judge.  Affirmed in part and reversed in part.

Judy Weissberg-Ortiz, under appointment by the Court of Appeal, for Defendant and Appellant Julie T.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant Miguel D.

Mary C. Wickham, Interim County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Baby Boy T. was born with a positive toxicology screen for marijuana. The juvenile court took jurisdiction over the infant and removed him from his parents' custody. (Welf. & Inst. Code, §§ 300, subd. (b) & 361, subd. (c).)[1] Mother Julie T. and father Miguel D. appeal contending there is insufficient evidence to support the findings underpinning the orders. We affirm the jurisdiction and disposition orders as to mother but reverse the disposition order as to father.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother's friend brought brownies laced with marijuana to mother's baby shower in November 2014. The baby was born the next day with marijuana in his system. Mother claimed she did not know about the marijuana when she ate the brownies. Mother also stated that she thought the friend brought the brownies for father because he suffered from anxiety. Mother ate one brownie by accident. The parents both denied abusing marijuana or any illegal substance and insisted that mother's consumption of the brownie was an isolated incident.

Mother however acknowledged that she was on informal probation for selling cocaine. Father denied any current or historical substance abuse. He acknowledged that he had a criminal history that included possession of marijuana with intent to sell. Asked to submit to a drug test, the parents slowly revealed that father had commenced daily methadone treatment 50 days earlier at Matrix Clinic variously for chronic pain from colon cancer and to resolve a two-year addiction to heroin. Mother apologized for not being forthright about father's addiction, but insisted that she did not have a history of substance abuse. A letter from the Matrix Institute on Addiction, which treats opiate addiction, confirmed father's enrollment in its 180-day detoxification program. He was progressing well, attending all counseling sessions, and drug testing.

The clinical partner in the hospital's pediatrics unit had no concerns about the parents who took care of the infant and were affectionate with him. The parents lived in

---

[1]     All statutory references are to the Welfare and Institutions Code.

a motel, which they paid for with government assistance and by panhandling. They had no family and had received donations of baby items from church. Mother showed the dependency investigator pictures of the baby equipment they had collected and the sleeping arrangements they had made for the infant.

After an assessment, the Department of Children and Family Services (the Department) categorized the infant as being at " 'very high' " risk for future abuse or neglect. The juvenile court detained the infant. The parents visited him once a week.

Mother had been convicted in March 2014 of transportation and sale of cocaine. She received three years of formal probation and 180 days in jail. Father had been convicted of the same crime in 2012, and between 2000 and 2007, of possession of paraphernalia, being under the influence of controlled substance, and possession of marijuana for sale. In an interview with the dependency investigator, father denied ever using heroin, marijuana, or " 'hard core narcotics.' " He claimed the methadone treatment was for withdrawal from the Percocet he had taken for a mass on his colon.

Shortly after the birth, mother enrolled in a drug abuse program. Both parents were testing clean.

At the jurisdiction hearing, the juvenile court questioned the parents' credibility. It found "a drug history that both parents have really lied about and attempted to downplay." It found mother's "story" that she did not knowingly eat a marijuana brownie "preposterous" and "very hard to believe." The court found father had a history of heroin use and lied about it, although he was not currently using. Father volunteered that he had a medical marijuana card. The only evidence the court had about mother's use was the one time just prior to giving birth. The court concluded that father either knew about mother's marijuana ingestion or was not concerned enough to check first and prevent her from eating the brownie. The court stated, "there's nothing more unfair to a child than to have that child come into the world already under the influence of drugs. So I find that there is definitely damage to the child, and there is a nexus here." The court sustained a count alleging the baby's birth with a positive toxicology screen for marijuana (§ 300, subd. (b)) and dismissed count B-2 alleging mother's drug use. The

3

court also dismissed count B-3, which alleged that father "has a history of substance abuse and is a current abuser of heroin, marijuana and methadone," and that "father's substance abuse renders the father unable to provide appropriate care and supervision of the child." The court explained it was unable to amend count B-3 to conform to proof. Accordingly, as the court acknowledged, father was nonoffending.

As for the disposition, the juvenile court found clear and convincing evidence that there was a substantial danger to the child's health, safety, protection, or well being and no reasonable means by which he could be protected without his removal and removed the infant from both parents' custody. (§ 361, subd. (c).) However, the court allowed unmonitored visits that could be gradually liberalized with a view toward returning the baby to his parents on the condition the parents continued to test clean. The court explained that it "want[ed] to see stability and sobriety in your household and that will make me believe that your home is safe for the child." Father was in the process of weaning himself and becoming sober, but was not there yet. The court ordered reunification services. Meanwhile, the court found, the baby was a "child of tender years who has already been a victim of the drug use" by mother while father failed to protect the baby. For those reasons, the court did not believe the home was safe for the infant. Finally, at mother's request, the court ordered the Department to look into whether the baby needed to be placed in a medical foster home because he was prone to infection and required antibiotics.

Mother and father separately appealed.

## CONTENTIONS

Mother contends there is no evidence to support the jurisdictional order. Both parents contend the removal order was error because it was not supported by substantial evidence.

## DISCUSSION

1. *The jurisdiction order is supported by substantial evidence.*

At the jurisdictional hearing, the juvenile court determines whether, based on a preponderance of the evidence, the allegations in the petition that the child comes within

4

section 300 are true. If so, the child falls within the court's jurisdiction. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1432, citing § 355.) We review the juvenile court's finding for substantial evidence. (*In re J.K.*, at p. 1433.) "Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion; it is evidence which is reasonable in nature, credible, and of solid value. [Citation.]" (*Ibid.*)

Subdivision (b) of section 300 authorizes dependency jurisdiction when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child, or the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left . . . ." (§ 300, subd. (b)(1).)

The juvenile court sustained one count under section 300, subdivision (b), namely that Baby Boy T. had a positive toxicology screen for marijuana at birth, which would not ordinarily occur except as the result of mother's unreasonable act of placing the child at risk of harm. Mother's substance abuse endangered the child's physical health and safety and placed the child at risk of physical harm and damage. There is ample evidence here to support the order sustaining this count. The infant was born with marijuana in his system. Although the parents continue to insist that mother did not knowingly ingest the drug the night before giving birth, the juvenile court found neither parent to be credible. Specifically, the court found this particular "story" to be "preposterous." We will not reassess the juvenile court's credibility finding or reweigh the evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

Mother argues even if there is evidence of past drug use, there was no evidence to support the juvenile court's assertion of jurisdiction at the time of the adjudication hearing because there was no evidence that the abuse would recur. She relies on statements made in *In re Rocco M.* (1991) 1 Cal.App.4th 814 and *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399. The *In re Rocco M.* court stated: "While evidence of past conduct may be probative of current conditions, the question under section 300 is

5

whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm. [Citations.] Thus the past infliction of physical harm by a caretaker, standing alone, does not establish a substantial risk of physical harm; '[t]here must be some reason to believe the acts may continue in the future.' " (*In re Rocco M.*, *supra*, at p. 824, fn. omitted.)

The contention is unavailing because proof of current risk of harm is not required to support the initial exercise of dependency jurisdiction under section 300, subdivision (b), which is satisfied by a showing the child has suffered *or* there is a substantial risk that the child will suffer, serious physical harm or abuse. (§ 300, subd. (b); *In re J.K.*, *supra*, 174 Cal.App.4th at p. 1436; *In re Adam D.* (2010) 183 Cal.App.4th 1250, 1261; *In re David H.* (2008) 165 Cal.App.4th 1626, 1642.) Moreover, as explained below, there is ample evidence that mother's drug use would recur.

### 2. *The disposition order*

Before a juvenile court may order children removed from their parents' custody it must find clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1); *In re T.V.* (2013) 217 Cal.App.4th 126, 135.) The declared purpose of the dependency laws is "to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." (§ 300.2.)

" 'A removal order is proper if it is based on proof of parental inability to provide proper care for the minor and proof of a potential detriment to the minor if he or she remains with the parent. [Citation.] The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child. [Citation.]' [Citations.] The juvenile court's findings must be based on clear and convincing evidence. [Citations.] We review an

6

order removing a child from parental custody for substantial evidence in a light most favorable to the juvenile court findings. [Citations.]" (*In re Miguel C*. (2011) 198 Cal.App.4th 965, 969.)

a. *The order removing the baby from mother's custody is supported by substantial evidence.*

Mother has a drug history about which she continued to lie and downplay as late as the disposition hearing. She was convicted of selling cocaine just months before the baby's birth. This baby was born with drugs in his system. The juvenile court could reasonably infer from all of this evidence that mother's drug use would recur.[2] Mother loves this baby and has begun a program to address her drug issues. Yet, the point of section 361, subdivision (c) is to avoid harm to the baby. Without removal from mother, this infant would be dependent on mother's ability to remain sober. The evidence supports the juvenile court's removal order as to mother.

b. *The order removing the baby from father's custody is not supported by substantial evidence*.

The juvenile court dismissed counts B-2 and B-3 which named father. Those counts alleged, respectively, that father "knew or reasonably should have known of the mother's substance abuse and *failed to protect the child*," and he "*has a history of substance abuse* and is a *current abuser of heroin, marijuana and methadone*, which renders the father incapable of providing the child with appropriate care and supervision. *The child is of such young age that requires constant care and supervision and that the father's substance abuse renders the father unable to provide appropriate care and supervision* of the child." (Italics added.) In dismissing counts B-2 and B-3, the court stated that it could not amend count B-3 to conform to proof. The court had "a problem

---

[2]     Cases cited by mother are distinguished. (See, e.g., *In re A.E.* (2014) 228 Cal.App.4th 820, 826 [isolated incident of spanking with a belt unlikely to recur]; *In re Henry V*. (2004) 119 Cal.App.4th 522, 529-530 [single occurrence of physical abuse and no indication in the record that the court made removal order by clear and convincing evidence].)

with the way B-3 is written because I don't believe there is evidence that he is currently abusing heroin, currently abusing methadone. I think you are using methadone, but I don't believe that there is evidence that you're abusing methadone."

If, as the juvenile court found, father is not currently abusing, then father's past history of substance abuse, absent some direct or circumstantial evidence of other risk of harm, is insufficient to justify removal. (§ 361, subd. (c).) Yet, at the disposition hearing, the court identified no other risk of harm.

The reason is that the juvenile court based its order removing the baby from father's custody on the very same facts alleged in counts B-2 and B-3. (See § 361, subd. (d) ["The court shall state the facts on which the decision to remove the minor is based"].) The evidence the court cited for removal was father's *drug history*; father was not yet completely sober. The child is of *tender years* who was already a victim of drug use by mother. The brownies were intended for father who *failed to protect the child by preventing mother from ingesting them*. But, where the court found insufficient evidence under the lower preponderance standard to sustain these allegations against father, these identical facts necessarily cannot amount to the required clear and convincing evidence to support removal. (*In re A.E.*, *supra*, 228 Cal.App.4th at p. 825 [clear and convincing standard under § 361, subd. (c) "is a heightened standard of proof from the required preponderance of evidence standard for taking jurisdiction over a child"].) Therefore, the order removing Baby Boy T. from father's custody is not supported by substantial evidence.

Furthermore, notwithstanding the parties' suggestions of methods for protecting the baby that were less drastic than removing him from father, the court failed to determine whether those methods constituted reasonable means to protect the child, in violation of section 361. (*Id.*, subd. (d) ["The court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the minor from his or her home" and "shall state the facts on which the decision to remove the minor is based"].) The court simply declined to consider releasing the baby to father, while simultaneously and contradictorily allowing father unmonitored visits

8

conditioned on his ongoing sobriety.  Under these circumstances, the disposition order as to father must be reversed, and the matter remanded for a new disposition hearing.  On remand, the juvenile court shall make its decision based on the facts existing at the time of the further proceedings.

## DISPOSITION

The jurisdiction and disposition orders as to Julie T. are affirmed.  The disposition order as to Miguel D. is reversed, and the matter remanded for further proceedings consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

EDMON, P. J.

LAVIN, J.

9