Filed 6/18/26  In re G.G.Q. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re G.G.Q., a Person Coming Under the Juvenile Court Law. | B346318 |
| ———————————————— | (Los Angeles County Super. Ct. No. 24CCJP00958B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| VICTORIA O., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tara L. Newman, Judge.  Affirmed.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Diane N. Nicola, Deputy County Counsel, for Plaintiff and Appellant.

Catrina Griffin, under appointment by the Court of Appeal, for Defendant and Appellant.

\* \* \* \* \* \*

The juvenile court asserted dependency jurisdiction over infant G.G.Q., and removed the infant from both parents' custody. The infant's mother now challenges the sufficiency of the evidence supporting that assertion as well as the sufficiency of the evidence supporting the court's finding that reasonable efforts had been made to prevent the need for removal. We reject both challenges and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *The family*

Victoria O. (mother) and Jose G.Q. (father) have one child together—G.G.Q. (born December 2024). Mother has another child, Logan A. (born March 2023), with another man. Father also has another child, Christopher G. (born February 2017), with another woman.[1] Mother is currently 21 years old; father is 30.

#### B. *Violence and control in the household*

Father has verbally or physically abused mother as well as Logan or Christopher on at least three occasions. In February 2024, father struck mother in the face, cutting her lip; he also scratched Logan's face. In March 2024, he pulled mother's hair,

---

[1] Logan and Christopher are the subjects of separate dependency proceedings that are not part of this appeal.

2

pushed her, and threw her onto the bed where Logan was sitting; in the same incident, he grabbed Logan, threw an empty Gatorade bottle at Logan, spat on him, and caused a bruise to Logan's eye. In May 2024, father struck mother with an open hand all over her body, and hit Christopher in the chest with an open hand. Mother did not report any of these incidents to law enforcement.

Father refers to mother as "a bitch" and calls her "stupid" and "dumb." He controls mother's access to family and friends. He only allows mother to contact family or friends using his cell phone, and only he knows the code to access it. As a result, mother has been isolated from her family and friends.

Mother has acknowledged that her relationship with father is "toxic," but has no intention of ending the relationship because "she loves him." She blamed father's violence toward Logan as due to father being jealous of the infant; mother initially denied any violence after March 2024, but then admitted that the May 2024 incident occurred after being confronted about it, and thereafter immediately recanted that admission. Father felt that his relationship with mother was "good," that mother had only "accused him" of domestic violence, and that *he* was the victim of persecution by social workers. Father also had instructed Christopher "'not to say anything'" when asked about the May 2024 incident Christopher witnessed.

C.     *Exertion of juvenile dependency jurisdiction over Logan*

In May 2024, the juvenile court exerted dependency jurisdiction over Logan, finding that the February 2024 and March 2024 incidents placed Logan "at risk of serious physical harm" (thereby warranting jurisdiction under Welfare and

3

Institutions Code section 300, subdivision (b)(1)).[2]  The court also removed Logan from mother's custody, and ordered her to participate in a domestic violence support group for victims, as well as individual counseling to address issues in the case, including co-dependency and the impact of domestic violence on children.  The court also issued a stay-away order prohibiting contact between father and Logan.  At Logan's six-month review hearing in November 2024, the juvenile court found that mother had only partially complied with her court-ordered reunification plan.

### D.    *Birth of G.G.Q.*

In December 2024, mother gave birth to G.G.Q.

## II.    Procedural Background

On January 29, 2025, and soon after learning of G.G.Q.'s birth, the Department filed a petition seeking to have the juvenile court exert dependency jurisdiction over G.G.Q.  Similar to the petition in Logan's case, the petition alleged that the February 2024 and March 2024 incidents placed *G.G.Q.* at "substantial risk of serious physical harm" (thereby warranting jurisdiction pursuant to section 300, subdivisions (b) and (j)).  The petition more specifically alleged two sets of otherwise identical allegations under subdivision (b) and (j)—namely, (1) one set based on father's "physical abuse" "against mother" (and "mother's" consequent "failure to protect" G.G.Q.) and (2) another set based on father's "physical abuse" of Logan (and "mother's" consequent "failure to protect" G.G.Q.).

On March 20, 2025, the juvenile court held a jurisdiction and disposition hearing.  The court sustained the above-

_____

[2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

enumerated counts.[3] The court then removed G.G.Q. from both parents, finding that leaving G.G.Q. in the parents' home would create substantial danger to G.G.Q's physical and emotional well-being, and that "the Department . . . made reasonable efforts to prevent removal but there are no services available to prevent further detention." The court ordered family reunification services for mother and father, as well as monitored visits with G.G.Q.

Mother timely filed this appeal.

## DISCUSSION

### I.    Exertion of Jurisdiction Over G.G.Q.

Mother argues that the juvenile court's exertion of dependency jurisdiction over G.G.Q. is not supported by the record.

As a threshold matter, the Department urges that we need not address mother's challenge because it is moot. Specifically, the Department contends that mother's opening brief challenges only the sufficiency of the evidence underlying the set of allegations pertaining to father's physical abuse against mother, and that mother's failure to attack the set of allegations pertaining to father's physical abuse of Logan means that there is an independently sufficient basis to sustain jurisdiction, such that any relief we might grant on appeal would not affect the juvenile court's jurisdiction over G.G.Q. (See *In re D.P.* (2023) 14

---

[3]    The Department had also alleged that the history of domestic violence and physical abuse of Logan warranted jurisdiction under section 300, subdivision (a), but the court struck those allegations because G.G.Q. "was not born and/or at risk of suffering serious physical harm inflicted non-accidentally during [the February and March 2024] incidents."

Cal.5th 266, 283 ["'"[A]s long as there is one unassailable jurisdictional finding, it is immaterial that another might be inappropriate"'"].) We reject this argument. Both sets of allegations rest on the same factual premise (that is, the February 2024 and March 2024 incidents), and mother's arguments on appeal address whether G.G.Q. remains at risk of physical harm due to those incidents; consequently, mother is effectively and necessarily challenging *all* of the allegations, regardless of whether she specifically mentioned the allegations pertaining to the physical abuse of Logan.[4]

Section 300, subdivision (b) authorizes the exertion of dependency jurisdiction where a child "has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of" "[t]he failure or inability of the child's parent . . . to adequately supervise or protect the child." (§ 300, subd. (b)(1)(A).) Section 300, subdivision (j), authorizes the exertion of dependency jurisdiction over a child if (1) "[t]he child's sibling has been abused or neglected" and (2) "there is a substantial risk that the child will be abused or neglected." (§ 300, subd. (j); *In re I.J.* (2013) 56 Cal.4th 766, 774.) We review the juvenile court's finding of jurisdiction for substantial evidence. (*I.J.*, at p. 773.) In so doing, we review the record in the light most favorable to the court's findings, drawing all reasonable inferences from the evidence to support those findings. (*Ibid.*)

Substantial evidence supports the juvenile court's exertion

---

[4] Father's failure to appeal the jurisdictional finding leaves jurisdiction intact. Although the Department noted that father did not appeal, it does not seek a finding of mootness on that basis.

of jurisdiction over G.G.Q. under subdivisions (b) and (j) of section 300.  There is sufficient evidence that *Logan* was abused or neglected because he was exposed to domestic violence—and himself the victim of such violence—during the February 2024, and March 2024 incidents.  Exposing a child to domestic violence can constitute a failure to protect a child from the risk of serious physical injury under subdivision (b).  (E.g., *In re L.O.* (2021) 67 Cal.App.5th 227, 238; *In re R.C.* (2012) 210 Cal.App.4th 930, 941.)  There is also sufficient evidence that *G.G.Q.* is at substantial risk of being exposed to domestic violence (and hence abused or neglected).  Mother and father continue to reside together; father continued to engage in domestic violence in May 2024 notwithstanding the classes he attended regarding domestic violence; mother continues to be isolated (and unwilling—and perhaps unable—to contact police if subjected to domestic violence), and both parents have minimized or refused to acknowledge past incidents of domestic violence.  (*In re A.F.* (2016) 3 Cal.App.5th 283, 293 ["'[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision'"].)  In other words, substantial evidence supports the juvenile court's finding that the same dynamic that gave rise to domestic violence during the February 2024 and March 2024 incidents persists, as that dynamic resulted in further violence in May 2024.  Although G.G.Q. (unlike Logan) has yet to be physically harmed by father's domestic violence and by mother's failure to protect her from that violence, a juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction."  (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1383, disapproved on another ground in *In re N.R.* (2023) 15 Cal.5th 520, 560, fn. 18.)

7

Mother resists this conclusion. She argues that there was but a "single incident" of domestic violence, and that no further domestic violence incidents have been reported. This argument misstates the record, which supports a finding of three prior incidents of domestic violence. Mother urges that both she and father attended classes and counseling; this is true, but the record also establishes that neither parent recalled the content of the classes, that the teachers and counselors found the parents resistant to the teachings, and that the parents continue to deny or minimize father's past abuse. Mother notes that G.G.Q. is otherwise "well cared for" and asserts that parents' failure to be "forthcoming" about the prior incidents translates into, at most, a "speculative" risk of harm. But Logan was also otherwise well cared for at the time he was physically assaulted by father; what is more, the law establishes that minimization and denial *are* relevant to assessing risk, and in conjunction with the other evidence adduced in this case, are sufficient to establish that G.G.Q. remains at substantial risk of serious physical harm.

## II.    Reasonable Efforts to Prevent Removal

Mother argues that the juvenile court's finding that reasonable efforts were made to prevent removal is not supported by the record.

Upon exerting dependency jurisdiction over a child, a juvenile court may also remove the child from her parent if it finds, by clear and convincing evidence, that (1) "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home," and (2) "there are no reasonable means" short of removal "by which the [child's] physical health can be protected." (§ 361, subd. (c)(1); Cal. Rules of Court, rule

8

5.695(c)(1) [required findings for removal].) To effectuate the second requirement, "[t]he court shall make a determination as to whether reasonable efforts were made to prevent or to eliminate the need for removal of the [child] from their home." (§ 361, subd. (e).) For these purposes, the Department's efforts need only be "reasonable under the circumstances" and "based on the particular circumstances of a case"; they need not be "perfect" or "'the best that might be provided in an ideal world.'" (*In re H.E.* (2008) 169 Cal.App.4th 710, 725; *In re Amy M.* (1991) 232 Cal.App.3d 849, 856; *Katie V. v. Superior Court* (2005) 130 Cal.App.4th 586, 598-599.) To provide a means of appellate review, "[t]he court shall [also] state the facts on which the decision to remove the [child] is based." (§ 361, subd. (e).) Because the court's "reasonable efforts" finding is part of its overall ruling on removal, our role is a limited one: We ask only "whether substantial evidence" "supports the [finding]," and do so viewing "the record in the light most favorable to th[at finding]." (*In re A.E.* (2014) 228 Cal.App.4th 820, 826.)

Substantial evidence supports the juvenile court's finding, by clear and convincing evidence, that reasonable efforts were made to eliminate the need to remove G.G.Q. from her home. The Department continued to offer mother and father classes aimed at addressing the domestic violence between the parents and the risks arising therefrom (which, if effective, would have obviated the need for either parent to move away), the Department explored whether mother could move to a shelter with G.G.Q., and the Department explored whether father could move out of the family home so that mother could remain there with G.G.Q. The classes did not obviate the risk to G.G.Q. because, as noted above, neither father nor mother recalled the

9

content of the classes nor modified their behavior; father prohibited mother from moving to a shelter; and father refused to move out of the family home.

Mother resists this conclusion. She argues that the Department did not consider whether to have father move out of the family home, but this argument ignores that the Department *did* explore this possibility. She relatedly argues that the Department did not consider that father was beginning to allow mother to access a phone more often and took the incident where it observed father controlling mother's access to the phone "out of context," but the court was within its discretion to credit the Department's firsthand observations over mother's counsel's representations. Mother argues that the parents engaged in classes and other services, but this argument ignores that these activities did not meaningfully change the parents' behavior (and thus did not reduce the risk of harm to G.G.Q. that would have prevented the need for removal). Mother argues that there is no evidence that the parents violated the safety plan (which was to have a violence-free home) because they have not had another domestic violence incident since May 2024, but this does not show that *the Department's* efforts were unreasonable. Mother argues that the juvenile court did not state a factual basis for its finding that the Department made reasonable efforts to prevent removal, but section 361 requires no such specific finding and the Rules of Court implementing that statute only require the juvenile court to make one of two findings regarding the Department's "reasonable efforts": "Reasonable efforts have been made to prevent removal" or "Reasonable efforts have not been made to prevent removal." (Cal. Rules of Court, rule 5.695(d).) The court did so here. No further factual elucidation is required, so

10

mother's complaint that this finding is "boilerplate" is of no moment. And even if it were, the court's failure to set forth those facts is harmless because the record contains the facts that support the court's finding.[5]

---

[5] To the extent that mother's contention that the juvenile court did not "state on the record the reasoning behind a finding that continued detention was necessary" is meant to be an independent challenge to the trial court's failure to explain the basis for its removal ruling (as opposed to the failure to explain the reasonable efforts finding), that contention lacks merit because the court *did* explain why "the risk [to G.G.Q.] remains" (and hence why continued detention is necessary)—namely, because the parent's relationship is "toxic," because father continues to "exhibit a controlling dynamic over [] mother," because mother "does not take any steps to remove herself from the situation or protect herself," such that father's "violent conduct" "endanger[s]" G.G.Q.

## DISPOSITION

The juvenile court's jurisdiction and disposition orders are affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, P. J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
KIM (D.)

12